IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| TAMIKA BIZZELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:12CV00075 (JPJ/PMS) |
| ) | |
| SPRINT/UNITED MANAGEMENT, CO. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT SPRINT/UNITED MANAGEMENT COMPANY'S
REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Ronda B. Esaw, Esq. (VA Bar No. 38268)
Melissa L. Taylormoore, Esq. (VA Bar 75506)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
Telephone: 703-712-5000
Facsimile: 703-712-5050
resaw@mcguirewoods.com
mtaylormoore@mcguirewoods.com
*Counsel for Defendant,
Sprint/United Management Company*

Defendant Sprint/United Management Company ("Sprint)"), by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Reply Memorandum to Plaintiff Tamika Bizzell's ("Plaintiff's") Response to its Motion for Summary Judgment, and states as follows:

## I. INTRODUCTION

Plaintiff's Response to Sprint's Motion for Summary Judgment (hereinafter "the Opposition") raises no genuine issues of material fact that preclude entry of summary judgment. Indeed, the Opposition is but a last ditch effort to try to create disputed material facts by inaccurately characterizing the Record and exclusively relying on a self-serving Declaration that is rife with speculation and unsupported conjecture. Contrary to Plaintiff's recitation of the Record, the undisputed material facts, which Plaintiff concedes in her Opposition, establish that: (1) Plaintiff had knowledge of the Call Center's policy prohibiting profanity, (2) a coworker – whom Plaintiff admits never engaged in any discriminatory behavior – reported to Sprint management that Plaintiff had used profanity on the Call Center floor; (3) all of the other Call Center employees who were found to have violated the Call Center's policy prohibiting profanity were terminated – just as Plaintiff was, and (4) at the time of her termination, Plaintiff was on her fourth written warning for rude and condescending behavior, which had been issued by a supervisor Plaintiff admitted did not discriminate against her. In the face of these undisputed material facts, Plaintiff's Opposition fails to offer the Court any viable basis for her primary argument – that Ms. Domer's decision to terminate Plaintiff's employment was tainted with racial animus. Accordingly, for the reasons set forth below, and those advanced in Sprint's Memorandum in Support of its Motion for Summary Judgment, the undisputed facts in the Record mandate entry of judgment in favor of Sprint, and the dismissal of Plaintiff's claims in their entirety.

1

## II. THERE ARE NO MATERIAL FACTS IN DISPUTE

### A. Facts Conceded By Plaintiff As Undisputed.

The following material facts were not disputed (specifically or by reference) in Plaintiff's Opposition, and thus have been conceded: 1-15, 18, 20-25, 27-32, and 34-45. Among them, the following are particularly salient:

- Sprint had several policies given to Call Center employees upon hire and which were located on the Company's intranet which outlined the requirements for Call Center employees, including its Standard of Conduct policy, its Zero Tolerance guidelines and its Profanity policy. (SOF ¶¶ 2-3).

- Plaintiff's supervisor reviewed the Profanity Policy and gave copies to his team in February 2011 and Plaintiff was aware that she could not use profanity at the Call Center. (SOF ¶ 3).

- The discussion logs (or cadets) evidence repeated attempts by Plaintiff's supervisors to correct Plaintiff's rude and unprofessional tone with customers and coworkers from 2001 through 2011. (SOF ¶¶ 5-14).

- In November 2010, David Smith, a supervisor who Plaintiff conceded did not engage in any discriminatory behavior, issued Plaintiff her fourth formal written notice for rude behavior. (SOF ¶ 15).

- James Worley, Plaintiff's supervisor in 2011, treated other non-black Call Center employees on his team in the same manner that he allegedly treated Plaintiff. Indeed, the only other testimony in the Record from a Call Center employee on Mr. Worley's team was that he treated all team members in a belittling fashion. (SOF ¶ 31).

- Neither Mr. Worley nor Ms. Leonard, or any other Call Center manager, had knowledge of Plaintiff's alleged complaints to Sprint's Ethics Hotline in late Spring 2011. (SOF ¶ 42).

- In late June 2011, Mary Lawson, Plaintiff's coworker, reported to Chris Leonard that she heard Plaintiff say "mother fucker" while on a call on the Call Center Floor. (SOF ¶ 19).

- Plaintiff has no evidence that any other Call Center employee outside of her protected class whom Sprint had reasonably determined to have engaged in similar misconduct was treated more favorably. (SOF ¶ 44). To the contrary, every other Call Center employee whom Sprint reasonably concluded had engaged in similar misconduct was terminated. (SOF ¶¶ 44-45).

### B. Plaintiff's Disputed Facts Are Either Immaterial Or Not In Dispute.

Plaintiff claims that some of the facts set forth in Sprint's Statement of Facts are in dispute. However, a cursory examination of the Record evidences that the facts raised in Plaintiff's Opposition are either inaccurate, immaterial or do not stand for the proposition proffered.

1. <u>Plaintiff's Platinum Performer Status.</u> Plaintiff attempts to side-step the undisputed fact that Sprint's contemporaneous counseling and coaching documents unequivocally establish that she was performing unsatisfactorily at the time of her termination by stating she was a "Platinum Performer." <u>See</u> Pl.'s Opp'n, 2. Plaintiff fails to mention, however, that the Platinum Performer status she touts was <u>not</u> a performance-based metric, but instead an attendance program, whereby Call Center employees received color ratings (e.g. silver, gold, platinum) for good attendance – not for good performance. (Pl.'s Dep. 167:21-168:19, attached as Ex. A). Accordingly, Plaintiff's reliance on being a "Platinum Performer" does not create a disputed material fact pertaining to Plaintiff's unsatisfactory performance at the time of her termination.

2. <u>Ms. Leonard's Conduct Towards Plaintiff.</u> Plaintiff attempts to characterize Ms. Leonard's actions towards Plaintiff in 2011 as racially motivated despite the fact that there is <u>no</u> evidence in the Record to support this claim. Plaintiff contends – for the first time – that Ms. Leonard told Plaintiff that an employee could not request a manager override before the month in which the requested day off fell. <u>See</u> Pl.'s Opp'n, 10. Even assuming that Plaintiff's statements are true despite not having disclosed this alleged conversation when asked in both written discovery and at her deposition, there is <u>no</u> evidence, and indeed Plaintiff does not claim, that Ms. Leonard did not give the same counsel to other Call Center employees. <u>Id.</u> As such, this allegation is patently insufficient to establish "racial bias" as Plaintiff's claims.

3

Plaintiff's attempt to establish racial animus on the part of Ms. Leonard by pointing to a 2009 incident involving Teresa Whittaker similarly fails. Specifically, Plaintiff contends that Ms. Leonard "berated" Plaintiff but failed to take any similar action against Ms. Whitaker. See Pl.'s Opp'n, 11. Plaintiff, however, provides no admissible testimony or evidence to support this alleged differential treatment, and indeed offers nothing beyond her own speculation that Ms. Leonard did not have a similar discussion with Ms. Whitaker. See Pl.'s Opp'n, 11; see also SOF ¶ 28. Moreover, Plaintiff conceded that this interaction with Ms. Whitaker and Ms. Leonard did not result in any suspension, loss of pay or other change to the terms or conditions of her employment. (SOF ¶ 28). Based on the above, Ms. Leonard's alleged conduct has no nexus to Plaintiff's race and does not create a triable issue that must be resolved by a factfinder.

Lastly, Plaintiff's characterizations of Ms. Leonard's conduct during her investigation into Plaintiff's use of profanity are not supported by the Record. Plaintiff claims that racial animus can be inferred from Ms. Leonard's decision not to reference Plaintiff's belief that Amy Stringer had previously used profanity during a team meeting off the Call Center floor. See Pl.'s Opp'n, 11. This supposition, however, conveniently ignores the undisputed testimony from Mr. Smith, the supervisor who led the meeting where Ms. Stringer allegedly cursed. Mr. Smith stated under oath that Ms. Leonard interviewed him, and that he told Ms. Leonard that he had never heard Ms. Stringer use profanity during a team meeting specifically or while on the Call Center floor generally. (SOF ¶ 43). As such, Ms. Leonard's alleged "omission" does not support any claim of racial animus.

Equally unavailing is Plaintiff's contention that Ms. Leonard "exaggerated and fabricated" Plaintiff's use of profanity in her investigation report to Ms. Domer. See Pl.'s Opp'n, 11. Contrary to Plaintiff's representation, the Record is devoid of any evidence that Ms.

Leonard exaggerated or fabricated the information in her recommendation to Ms. Domer. The notes from the witnesses who sat in on Ms. Leonard's interviews – individuals whom Plaintiff admits never engaged in any alleged discriminatory conduct – corroborate the information in Ms. Leonard's recommendation to Ms. Domer. See Ex. D to D. Domer's Declaration, attached as Ex. 2, Def.'s Mem. in Supp. Plaintiff's reliance on Mary Cozart's testimony to undercut the reasonableness and accuracy of Ms. Leonard's investigation is similarly flawed. Ms. Cozart testified that she could not recall the specifics from her interview with Ms. Leonard and that she does not remember her specific comments to Ms. Leonard – she did not testify as Plaintiff suggests that Ms. Leonard's notes were inaccurate or exaggerated. (SOF ¶ 23). Thus, there are no facts in the Record calling into question the information contained in Ms. Leonard's recommendation to Ms. Domer.

### III. ARGUMENT

Plaintiff's Title VII claims are properly subject to summary judgment in favor of Sprint as Plaintiff has failed to set forth specific facts demonstrating that a triable issue of fact exists. See Fed. R. Civ. Pro. 56(e). As outlined below, Plaintiff cannot make a showing sufficient to establish that: (1) she was performing her job satisfactorily at the time of her termination, (2) similarly situated employees outside of her protected class received more favorable treatment, or (3) that Sprint's decision to terminate her employment was pretextual. Accordingly, summary judgment is warranted as Plaintiff cannot satisfy her burden with respect to any of these elements of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c).

#### A. Plaintiff Was Not Satisfactorily Performing Her Job At The Time of Her Termination.

The undisputed material facts demonstrate that Plaintiff was repeatedly counseled regarding her performance – specifically her tone, speed and word selection. See, e.g. SOF ¶ 7

5

(counseling Plaintiff on not bumping or over-talking customers), ¶ 9 (counseling Plaintiff on using "cushions" to avoid perception of being rude); ¶ 12 (counseling Plaintiff to match the speed of the customer). These perceptions were not limited to a small group of individuals that Plaintiff claimed acted in a discriminatory fashion, but instead were made by at least six different supervisors and three different managers over the course of multiple years; each of whom coached or issued corrective actions to Plaintiff for racially-neutral concerns they witnessed. (SOF ¶ 6). Importantly, Plaintiff does not and cannot claim that all of these counselings or corrective actions were racially motivated. Instead, Plaintiff offers her own self-serving assertions that Ms. Blaylock, Ms. Mullins and Mr. Worley criticized Plaintiff's "black accent." These unsubstantiated claims however are insufficient as a matter of law to create a disputed material fact regarding Plaintiff's job performance at the time of her termination. Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

Given that her unsubstantiated allegations of discrimination cannot salvage her claims, Plaintiff offers her own subjective explanations of why she believes she was performing her job adequately and why she believes her tone and communication style were not discourteous. See e.g. Pl.'s Opp'n, 20-21. Plaintiff's self-serving beliefs about her performance, however, are immaterial. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (internal quotations and citation omitted) (holding that it is the perception of the decision maker – not the self-assessment of the plaintiff – that is relevant in determining satisfactory job performance"). Instead, it is the perception of the employer who controls. As such, the undisputed facts in the Record preclude

6

Plaintiff from establishing the third prong of her prima facie case, and mandate judgment in favor of Sprint.

> **B.  Sprint's Decision To Terminate Plaintiff Was Consistent With Its Treatment Of Other Similarly Situated Employees.**

As outlined above, when Plaintiff's claims are stripped of her self-serving testimony, convenient omissions, and inaccurate representations, the undisputed material facts demonstrate that Plaintiff was treated similarly to other Call Center employees. In the same year it terminated Plaintiff's employment for violation of the Call Center's profanity policy, Sprint reasonably concluded that four other Call Center employees besides Plaintiff had used profanity at the Call Center. Sprint terminated the employment of all four employees, all of whom were Caucasian. (SOF ¶ 44).

Moreover, in order for Plaintiff's claims to survive summary judgment and proceed to trial, Plaintiff must identify a similarly situated individual who engaged in similar conduct and was treated more favorably, not equally. See White v. BFI Waste Servs. LLC, 375 F.3d 288, 295 (4th Cir. 2004) (the fourth prong of a discrimination claim requires the plaintiff to show that the defendants treated her less favorably than similarly situated employee outside of the protected class). Plaintiff has not identified any facts in the Record – disputed or otherwise – that another employee whom Sprint reasonably concluded had engaged in similar conduct was treated more favorably. The only individual Plaintiff identified as having engaged in similar conduct and who was not fired was Amy Stringer. As noted above, however, Plaintiff's Opposition ignores the undisputed testimony of David Smith, whose sworn declaration testimony establishes that: (1) Ms. Leonard questioned him about Ms. Stringer's alleged use of profanity and (2) he had never heard Ms. Stringer use profanity during a team meeting specifically or while on the Call Center floor generally. (SOF ¶ 43). In a baseless attempt to circumvent this undisputed testimony,

7

Plaintiff states that "it appears that [Mr.] Smith remembers and is parsing his words to avoid perjury and still create a false impression for the Court." "Conclusory allegations do not suffice to resist summary judgment, nor can the nonmoving party create a genuine issue of material fact through mere speculation or the building of one inference upon another." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004) (citing Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)). Given that Plaintiff has nothing more than mere speculation that Mr. Smith is not testifying truthfully, her attempt to create a disputed material fact regarding Ms. Stringer's alleged use of profanity fails as a matter of law.

Thus, the Record establishes that Sprint's treatment of Plaintiff was consistent with the non-black employees whom Sprint reasonably determined had used profanity at the Call Center.

### C.    Plaintiff Cannot Establish Pretext.

Even if Plaintiff could carry her prima facie burden, which she cannot do, Plaintiff has failed to sufficiently demonstrate that Sprint's proffered legitimate reasons were pretextual. Plaintiff's Opposition claims that Ms. Leonard's investigation was tainted with racial animus and that Ms. Domer was merely a cat's paw for a supposed racially motivated agenda of Ms. Leonard to have Plaintiff terminated. Plaintiff's claim, however, is not substantiated by the undisputed facts in the Record, and there is no basis from which a reasonable trier of fact could conclude that Sprint's decision to terminate Plaintiff's employment was pretextual.

Under the "cat's paw" theory of liability "if a supervisor performs an act motivated by [unlawful] . . . animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable," even if the ultimate decision maker as to the adverse action did not have a discriminatory

8

animus.  Staub v. Proctor Hosp., 131 S.Ct. 1186, 1194 (2011).  Here, the undisputed material facts preclude Plaintiff from establishing the requisite racial animus or proximate causation elements of the Staub test.[1]

First, there are no facts beyond Plaintiff's self-serving testimony to establish racial animus on the part of any Sprint supervisor or manager, including Mr. Worley or Ms. Leonard, when the supervisors and managers counseled Plaintiff for her performance deficiencies or when it decided to terminate Plaintiff's employment for violating a well-known conduct rule.  As fully detailed above, the Record demonstrates that prior to her termination, Plaintiff was counseled and disciplined not because of her race but because of legitimate performance concerns related to her tone and word selection with customers and coworkers which resulted in her being viewed as rude and condescending.  (SOF ¶¶ 5-14).  The Record is replete with racially-neutral feedback supervisors and managers repeatedly offered to Plaintiff regarding how to communicate effectively and consistent with Sprint's code of conduct.  See supra, 4-6.  There is simply no basis to infer racial animus based upon these counselings as there is no nexus to Plaintiff's race.  For example, Plaintiff admitted at deposition that Ms. Blaylock, one of the alleged supervisors who acted with racial animus, terminated a white Call Center employee for similar rude conduct.

---

[1] Plaintiff's recitation and reliance on Hill v. Lockheed Martin Logistics Mgmt., 314 F.3d 657, 666-67 (4th Cir. 2003) as the Fourth Circuit's standard for cat's paw liability is improper. The case Plaintiff cites was vacated by Hill v. Lockheed Martin Logistics Mgmt., 2003 U.S. App. LEXIS 2859 (4th Cir. Feb. 12, 2003) and reheard en banc.  See Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277 (4th Cir. 2004).  In its en banc decision, the Fourth Circuit specifically "decline[d] to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." Id. at 291. "Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." Id. (All unpublished cases are attached alphabetically in Exhibit B.)

9

(SOF ¶ 29). Moreover, as outlined in Section II(B), the Record is devoid of any facts indicating that non-black Call Center employees who engaged in similar misconduct were treated more favorably than Plaintiff. Thus, there are no <u>facts,</u> as opposed to Plaintiff's self-serving conjecture, from which a reasonable jury could conclude that the well-documented performance deficiencies in the Record were the result of racial animus.

Second, there are no facts from which a reasonable jury could conclude that so-called racially motivated conduct of Mr. Worley, Ms. Blaylock or Ms. Leonard proximately caused Ms. Leonard's recommendation to Ms. Domer. It was not Mr. Worley's conduct or any other Sprint supervisor that proximately caused Plaintiff's termination – it was the complaint of Ms. Lawson – a coworker whom Plaintiff admitted never engaged in any discriminatory conduct – that proximately cause the investigation and ultimate termination of Plaintiff's employment. While Plaintiff's Opposition disputes whether or not Plaintiff actually used profanity (Pl.'s Opp'n, 14-15), Plaintiff does not dispute – because she cannot – that Ms. Lawson made the complaint to Ms. Leonard based upon her belief that Plaintiff had in fact used profanity. Importantly, Ms. Lawson's sworn declaration corroborates the information contained in Ms. Leonard's notes and the investigation report that Ms. Domer reviewed when making the decision to terminate Plaintiff's employment. Thus, it was not the events Plaintiff has claimed were discriminatory (i.e. her prior counselings or Mr. Worley's actions in response to the alleged conduct of a store representative) that proximately caused Plaintiff's termination, but instead it was Ms. Lawson's undisputed complaint to Ms. Leonard.

Plaintiff's repeated attempt to advance her alleged call to the Ethics Hotline as a motive in the decision to terminate her employment is baseless. The undisputed material facts establish that no manager or supervisor at the Call Center had knowledge of any alleged calls to the Ethics

10

Hotline. (SOF ¶ 42). While Plaintiff speculates that the fact she stated she was a black member of Mr. Worley's team identified her to the Ethics Hotline representative (Pl.'s Opp'n, 4-5), there is no evidence that Mr. Worley, Ms. Leonard or any other Call Center manager actually learned of Plaintiff's alleged calls. To the contrary, both Mr. Worley and Ms. Domer testified under oath that they had no knowledge of Plaintiff's purported calls to the Ethics Hotline until Plaintiff's Complaint was filed. (SOF ¶ 42). Moreover, Mr. Worley had <u>no</u> input or role in Ms. Leonard's investigation or Plaintiff's termination. (SOF ¶¶ 21-22). As such, Plaintiff's alleged calls to Sprint's hotline, even if true, have no connection to Plaintiff's termination.

Above and beyond the facts above, which foreclose Plaintiff from establishing the necessary <u>Staub</u> elements, there is no evidence that Ms. Domer merely "rubber stamped" Ms. Leonard's recommendation to terminate Plaintiff's employment. Ms. Domer reviewed Ms. Leonard's recommendation, along with the underlying notes, and reviewed Plaintiff's performance history. (SOF ¶ 24). This reasonable and independent analysis of the facts underlying Ms. Leonard's recommendation renders the cat's paw theory inapplicable to this case. As such, for the reasons outlined above, Plaintiff has failed to demonstrate the existence of a disputed material fact that could allow a reasonably jury to conclude that Sprint's decision was a mere pretext for racial discrimination.

### D. Plaintiff's Opposition Similarly Fails To Create A Disputed Material Fact Precluding Summary Judgment On Plaintiff's Retaliation Claim.

The sole basis for Plaintiff's Opposition to Sprint's Motion for Summary Judgment as to Plaintiff's retaliation claim is that her retaliation claim does not "flow" from Plaintiff's alleged Ethics Line calls, but instead stems from Plaintiff's alleged complaint to Mr. Worley regarding the statements made by a store representative. <u>See</u> Pl.'s Opp'n, 18. Even assuming Plaintiff did complain to Mr. Worley and report that a store representative had used racially charged

11

language, a fact which Mr. Worley denies and Plaintiff's own initial summary of the incident disproves,[2] it does not cure the legal deficiencies of Plaintiff's retaliation claim. The Record is devoid of any facts, disputed or otherwise, that could reasonably evidence a causal connection between Plaintiff's alleged complaint to Mr. Worley and her termination.

As fully set forth in Sprint's Memorandum in Support, to establish causality, the protected activity "must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Akers v. Highlands Cmty. Servs. Bd., Case No. 1:08cv00039, 2010 U.S. Dist. LEXIS 3421, *10 (W.D. Va. Jan. 10, 2010) (quoting Reeves, 530 U.S. at 141). Here, there are no facts evidencing that Mr. Worley communicated Plaintiff's alleged complaint regarding a store representative to Ms. Leonard or Ms. Domer. Thus. There is no evidence in the Record that Ms. Leonard or Ms. Domer had any knowledge of Plaintiff's alleged complaint to Mr. Worley about a store representative. This failure precludes any reasonable trier of fact from concluding that Plaintiff's alleged protected activity played any role in Ms. Dormer's termination decision, rendering Plaintiff's retaliation claim legally deficient and mandates that summary judgment be awarded to Sprint. See id. at *10-13 (granting summary judgment on plaintiff's retaliation claim where plaintiff failed to establish facts linking her protected activity to the ultimate decisionmaker).

## V.     CONCLUSION

For the reasons stated herein and those stated in Sprint's Memorandum in Support, Sprint respectfully moves this Court to grant it summary judgment as to all counts, and dismiss Plaintiff's claims in their entirety with prejudice.

---

[2] See Ex. 18 to Def.'s Mem. in Supp. (statement made Plaintiff in approximately July 2011 claiming that the store representative was "cursing at [her] and calling [her] names" and not asserting any claims that racially charged language was used).

12

Submitted,

SPRINT/UNITED MANAGEMENT COMPANY
*By Counsel*


      s/ Melissa L. Taylormoore

Melissa L. Taylormoore, Esq. (VA Bar No. 75506)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102
(703) 712-5000 (main)
(703) 712-5050 (main fax)
(703) 712-5479 (direct)
(703) 712-5229 (direct fax)
mtaylormoore@mcguirewoods.com

Ronda B. Esaw, Esq. (VA Bar No. 38268)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102
(703) 712-5000 (main)
(703) 712-5050 (main fax)
(703) 712-5392 (direct)
(703) 712-5251 (direct fax)
resaw@mcguirewoods.com

*Counsel for Defendant Sprint/United Management Company*

# CERTIFICATE OF SERVICE

      I hereby certify that on the 12th day of January, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Marsha M. Arnurius
>P.O. Boz 3812
>Johnson City, TN 37602

And I further certify that a true copy of the foregoing has also been served upon the following non-filing user via First Class mail:

>Charlton R. Devault, Jr.
>102 Broad Street
>Kingsport, TN. 37601

>       s/ Melissa L. Taylormoore
>Melissa L. Taylormoore, Esq. (VA Bar No. 75506)
>McGuireWoods LLP
>1750 Tysons Boulevard, Suite 1800
>Tysons Corner, Virginia  22102
>(703) 712-5000 (main)
>(703) 712-5050 (main fax)
>(703) 712-5479 (direct)
>(703) 712-5229 (direct fax)
>mtaylormoore@mcguirewoods.com
>*Counsel for Defendant Sprint/United Management Company*

/54177526.1